UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN DUANE LONG, | No. 2:15-CV-00087-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF No. 15, 16.  Attorney Dana C. Madsen represents Kevin Duane Long (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 14.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on April 26, 2010, alleging disability since June 22, 2009, due to a left shoulder

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

injury, hepatitis B, and drug problems.  Tr. 217-220, 233, 238.   The application

was denied initially and upon reconsideration.  Tr. 130-133, 137-140.

Administrative Law Judge (ALJ) R.J. Payne held a hearing on October 28, 2011, at

which Plaintiff, represented by counsel, and medical expert (ME) Sterling Emory

More, M.D., testified.  Tr. 40-71.  The ALJ issued an unfavorable decision on

November 10, 2011.  Tr. 111-119.  The Appeals Council granted review and

remanded the case for additional proceedings on January 30, 2013.  Tr. 124-127.

The ALJ held a second hearing on August 20, 2013, at which Plaintiff, represented

by counsel, and ME Stephen Rubin, Ph.D., testified.  Tr. 72-105.  The ALJ issued

an unfavorable decision on September 13, 2013.  Tr. 20-34.  The Appeals Council

denied review on February 5, 2015.  Tr. 1-3.  The ALJ's September 13, 2013,

decision became the final decision of the Commissioner, which is appealable to the

district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial

review on April 1, 2015.  ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts,

the ALJ's decision, and the briefs of the parties.  They are only briefly summarized

here.

Plaintiff was 45 years old at the date of application.  Tr. 217.  He completed

his GED in 1981.  Tr. 239.  He has worked as a laborer and assembler, but has

minimal earnings in the fifteen years leading up to the August 30, 2013, hearing.

Tr. 226-228, 240.  Plaintiff reported he stopped working in 2009 because of his

conditions.  Tr. 238.

At the administrative hearing, Plaintiff described (1) a left shoulder injury

resulting in continued grinding and popping with movement and limited lifting of

15 to 20 pounds, Tr. 86-87; (2) hepatitis causing abdominal pain, fatigue, and

nausea, Tr. 87-88; (3) low back pain for the last 25 years, resulting in difficulty

bending over and sitting still, Tr. 89-90; and (4) mental problems.  Tr. 91.  Plaintiff

testified to years of meth use followed by sobriety starting in November of 2010 with no relapses.  Tr. 89.  Additionally, he testified that he had a medical marijuana card and used marijuana a couple times a week for pain.  Tr. 88.  Plaintiff stated he was in constant pain and occasional used aspirin.  Tr. 97-98.  He testified he hangs out, goes for bike rides, watches TV, plays his guitar, reads, does his laundry, helps with dishes, prepares cereals and soups, and attends church.  Tr. 98-101.

Plaintiff underwent three separate psychological evaluations by Kayleen Islam-Zwart, Ph.D., on May 16, 2011, Tr. 495-499; Dennis Pollack, Ph.D., on October 21, 2011, Tr. 530-540; and John Arnold, Ph.D., on November 15, 2012. Tr. 587-590.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 13, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 26, 2010, the date of application. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairments: left shoulder injury status post reconstruction; degenerative disk disease; and hepatitis B, status post treatment. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 30.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC)

1    and determined he could perform a range of light work:

2
3          [T]hat does not require more than frequent climbing of ramps or stairs,
           balancing, stooping, kneeling, or crouching, and no more than
4          occasional climbing of ladders, ropes, or scaffolds, and crawling. He
           is capable of reaching in all directions, including overhead with the
5          non-dominant left upper extremity on an occasional basis. He should
6          avoid concentrated exposure to extreme cold and hazards, such as
           machinery and heights.
7

8    Tr. 30.  The ALJ found that Plaintiff had no past relevant work.  Tr. 33.

9          At step five, the ALJ determined that, considering Plaintiff's age, education,

10   work experience and RFC, and based on the medical-vocational rule 202.20, there

11   were other jobs that exist in significant numbers in the national economy Plaintiff

12   could perform.  Tr. 33-34.  Thus, the ALJ determined Plaintiff was not under a

13   disability within the meaning of the Social Security Act at any time from April 26,

14   2010, through the date of the ALJ's decision, September 13, 2013.  Tr. 34.

15                                    **ISSUES**

16         The question presented is whether substantial evidence supports the ALJ's

17   decision denying benefits and, if so, whether that decision is based on proper legal

18   standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider

19   Plaintiff's credibility; (2) failing to accord weight to the opinions of examining

20   psychologists; (3) failing to comply with the Appeals Council's order on remand;

21   and (4) failing to find Plaintiff's mental health impairments severe at step two.

22                                  **DISCUSSION**

23   **A.    Credibility**

24         Plaintiff contests the ALJ's adverse credibility determination in this case.

25   ECF No. 15 at 9-11.

26         It is generally the province of the ALJ to make credibility determinations,

27   *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

28   cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not entirely credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 31. The ALJ reasoned that Plaintiff was less than fully credible because (1) his symptom reports were inconsistent with the medical evidence; (2) there was evidence of secondary gain; (3) his symptom reports were inconsistent with his activities of daily living; and (4) his statements regarding substance use were inconsistent. Tr. 27, 31-32.

While the ALJ's decision contains references to secondary gain, the ALJ did not make a finding of malingering. Therefore, the proper standard to review the ALJ's credibility determination is the specific, clear and convincing standard.

### 1.    Contrary to the objective medical evidence

First, the ALJ found Plaintiff less than fully credible because his symptom reports were inconsistent with the medical evidence. Tr. 27, 31. In making this determination, the ALJ summarized Plaintiff's testimony and provided citations to the record showing evidence inconsistent with Plaintiff's testimony. Tr. 27, 31-32.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff does not challenge this conclusion in his briefing, but asserts that this reason alone is insufficient to support the ALJ's determination. ECF No. 15 at 10. As addressed below, the ALJ provided additional legally sufficient reasons for finding Plaintiff less than fully credible. As such, the ALJ's finding that Plaintiff's

symptom reports were inconsistent with the medical evidence supports the ALJ's unfavorable credibility determination.

### 2.    Secondary Gain

The ALJ found that "the factor of 'secondary gain' is relevant in this case." Tr. 27.  The ALJ may reasonably weigh a claimant's secondary gain motivations against his credibility.  *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998).

To support his determination, the ALJ referenced statements Plaintiff made to Dr. Islam-Zwart in Exhibit 14F, denying any real interest in the use of medication or therapy to improve his situation; statements to Dr. Pollack at l6F that he spent most of his day sitting around his mother's house watching TV and playing the guitar; and statements to Dr. Toews at 20F that he was disinterested in doing anything to improve himself and was poorly motivated to work or seek vocational training.  Tr. 27.

Plaintiff does not challenge the ALJ's conclusion that secondary gain is a relevant factor in Plaintiff's credibility.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the failure to challenge an issue in the opening brief waives the issue).  Therefore, this is a specific, clear and convincing reason to find Plaintiff less than fully credible.

### 3.    Activities of Daily Living

Third, the ALJ found Plaintiff less than fully credible because he "testified to a wide variety of activities of daily living." Tr. 32.  To support this determination, the ALJ provided a summary of Plaintiff's activities, including hanging out, going for bike rides, watching TV, playing guitar, reading, using a computer, doing the dishes, doing the laundry, making simple meals, going to church, having friends, shopping for groceries, and riding the bus.  *Id*.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of

physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ simply summarized Plaintiff's testimony. Tr. 31-32. He did not set forth what activities of daily living contradict what testimony. Furthermore, he did not make any finding regarding how these activities of daily living transfer to a work setting. As such, this is not a specific, clear and convincing reason to support the ALJ's credibility determination.

### 4.   Statements of Drug and Alcohol Use

Fourth, the ALJ found Plaintiff's statements regarding his drug and alcohol use were inconsistent, and therefore undermined his credibility. Tr. 27. To support his determination the ALJ stated the following:

> Although he testified he has been clean and sober from methamphetamines since November 2010 with no relapses, there were references to "needle sticks" in June 2011 and August 2011 (15F/19, 24); at 22F/2, he stated he started using heroin "last August" when his brother died, which would have been August 2011, with last use on Superbowl Sunday 2011, which must have meant 2012. He also testified the last time he drank alcohol was "two years ago," i.e., 2011, yet at 22F he reported being in prison for the past 8 months [approximately March 2012 to October 2012] and drinking beer daily prior to that.

Tr. 27.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears

less than candid." *Smolen*, 80 F.3d at 1284.  Additionally, an ALJ may properly consider evidence of a claimant's substance use in assessing credibility.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (the ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).  Again, Plaintiff failed to raise an objection to this rationale in his briefing.  *See Carmickle*, 533 F.3d at 1161 n.2 (the failure to challenge an issue in the opening brief waives the issue).  Therefore, this is a specific, clear and convincing reason to find Plaintiff less than fully credible.

### 5.    Conclusion

In conclusion, the ALJ supported his unfavorable credibility determination with specific, clear and convincing reasons.  Any error resulting from the ALJ's reliance on Plaintiff's activities of daily living in determining Plaintiff's credibility is harmless because the ALJ provided other legally sufficient reasons supported by substantial evidence to find Plaintiff less than fully credible.  *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

Plaintiff asserts the ALJ found him less than fully credible because of his noncompliance in the recovery of his shoulder injury.  ECF No. 15 at 10.  The ALJ's reference to Plaintiff's noncompliance was in the context of demonstrating that Plaintiff's complaints were not consistent with the medical evidence in the record.  Tr. 31.  Therefore, the Court finds that the ALJ did not support his credibility determination on Plaintiff's noncompliance leading to the further injury

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

of the left shoulder.

**B.   Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by examining psychologists, Dr. Islam-Zwart, Dr. Arnold, and Dr. Pollack.  ECF No. 15 at 12-13.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id.* at 830-831. Plaintiff appears to assert that the specific and legitimate standard is appropriate in this case, and Defendant agrees.  ECF No. 15 at 12; ECF No. 16 at 11.

The specific and legitimate standard can be met by the ALJ "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Brown*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ cannot just offer his conclusions; he must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

**1.    Dr. Islam-Zwart/Dr. Arnold**

Dr. Islam-Zwart evaluated Plaintiff on May 16, 2011, at the request of

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

Washington State Department of Social and Health Services (DSHS) to evaluate his eligibility for public assistance. Tr. 495. Dr. Islam-Zwart completed a clinical interview, a Trails Making Test, and a Fifteen Item Memory Test. Tr. 495-499. Additionally, she reviewed Plaintiff's Statement of Health, Education, and Employment form from DSHS dated May 6, 2011. Tr. 491. On the Trails Making Test, the Trails A was within normal limits, but the Trails B took 141 seconds with one error, which fell in the severely impaired range. Tr. 499. The Fifteen Item Memory Test "was suggestive of malingering, but also may have been a function of his carelessness." *Id*.

Based upon the evaluation and testing, Dr. Islam-Zwart opined that Plaintiff had a significant interference with the following abilities: (1) to understand, remember, and persist in tasks by following complex instruction or three or more steps; (2) to learn new tasks; (3) to perform routine tasks without undue supervision; (4) to be aware of normal hazards and take appropriate precautions; (5) to communicate and perform effectively in a work setting with public contact; and (6) to communicate and perform effectively in a work setting with limit public contact. Tr. 493. Additionally, Dr. Islam-Zwart opined that Plaintiff had a very significant interference with maintaining appropriate behavior in a work setting. *Id*. Dr. Islam-Zwart further diagnosed Plaintiff with polysubstance dependence, most recently marijuana and concluded that alcohol or drug treatment would likely improve his ability to function in a work setting. Tr. 493. Dr. Islam-Zwart stated:

> It is noteworthy that he reports having a medical marijuana card and smoking marijuana on a daily basis, the last time the day prior to the evaluation. Given the potential for Mr. Long's marijuana use to worsen his symptoms, evaluation and treatment as recommended seems warranted. Mr. Long denies any real interest in use of medication or therapy; and it is difficult to determine if there is a true need given his history of substance dependence and continued use of marijuana. . . . Mr. Long does seem unable to work at this time given his constellation of issues. He clearly has problems with focus and persistence, his work

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

history is limited, and responsible behavior will likely be challenging
for him.

Tr. 499.

Dr. Arnold evaluated Plaintiff on November 15, 2012. Tr. 590. Dr. Arnold
performed a clinical interview, MSE, reviewed medical records, and performed a
Trails Making Test and a Rey 15-Item Test. Tr. 587. The testing results were
within normal limits. Tr. 588.

Dr. Arnold opined that Plaintiff had a marked limitation in the ability to (1)
understand, remember, and persist in tasks by following detailed instructions; (2)
adapt to changes in a routine work setting; (3) communicate and perform
effectively in a work setting; (4) complete a normal work day and work week
without interruptions form psychologically based symptoms; and (5) maintain
appropriate behavior in a work setting. Tr. 589. Additionally, Dr. Arnold opined
that Plaintiff had a moderate limitation in the ability to (1) understand, remember,
and persist in tasks by following very short and simple instructions; (2) perform
activities within a schedule, maintain regular attendance, and be punctual within
customary tolerances without special supervision; (3) perform routine tasks
without special supervision; (4) be aware of normal hazards and take appropriate
precautions; (5) ask simple questions or request assistance; and (6) set realistic
goals and plan independently. Tr. 589. Dr. Arnold concluded that the impairments
were not the result of alcohol or drug use and that the impairments would persist
following sixty days of sobriety. *Id.*

The ALJ gave Dr. Islam-Zwart and Dr. Arnold's opinion "little weight"
because (1) they were based on Plaintiff's self-report; (2) they were done for the
purpose of qualifying for public assistance; and (3) they were not supported by the
overall record. Tr. 28.

First, the ALJ rejected Dr. Islam-Zwart and Dr. Arnold's opinions because
they were based on Plaintiff's self-reports. Tr. 29. A doctor's opinion may be

discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041. As addressed above, the ALJ determined Plaintiff to be less than fully credible and supported his determination with specific, clear and convincing reasons. Therefore, rejecting Dr. Islam-Zwart and Dr. Arnold's opinions because they were based on Plaintiff's self-report is a specific and legitimate reason.

Plaintiff argues that Dr. Islam-Zwart's opinion was based on a review of the records, objective testing, and personal observations. ECF No. 15 at 12. There is no evidence that Dr. Islam-Zwart reviewed any of Plaintiff's medical records. Instead, she reported that she reviewed a DSHS Statement of Health, Education, and Employment form. Tr. 491. The "Psychiatric History" section of the report contains seven paragraphs, all of which start with a variation of "Mr. Long states," "Mr. Long report," "Mr. Long describes," or "Mr. Long maintains." Tr. 495-496. The objective testing performed was limited to a Mini-MSE, a Trails Making Test, and a Fifteen Item Memory Test, which was suggestive of malingering. Tr. 499. Here, there was testing and personal observations during the clinical interview, but there was also evidence supporting the ALJ's conclusion that the opinion was based on Plaintiff's self-report. Therefore, the ALJ's determination that Dr. Islam-Zwart relied on Plaintiff's self-report in forming her opinion is supported by the record. *See Sprague,* 812 F.2d at 1229-1230 (if substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive).

Plaintiff asserts that Dr. Arnold's opinion is based on his clinical interview, a MSE, a review of the records, the Trails Making Test and the Rey 15-Item Test and that these are sufficient to show that the opinion was based on more than Plaintiff's statements. ECF No. 15 at 12-13. The testing performed by Dr. Arnold included a Rey Malingering test, in which Plaintiff scored fifteen out of fifteen, and a Trails Making test, in which Plaintiff completed Trails A in 45 seconds and

Trails B in 80 second.  Dr. Arnold indicated these scores placed Plaintiff within normal limits.  Tr. 588.  Yet, he opined that Plaintiff had a number of marked limitations in cognitive factors.  Tr. 589.  Therefore, it was reasonable that the ALJ assessed the difference between the test results and the severity of limitations to be attributed to Dr. Arnold relying on Plaintiff's statements.

Second, the ALJ rejected Dr. Islam-Zwart and Dr. Arnold's opinions because the evaluations and opinions were "done for a purpose separate and apart from social security disability cases; i.e. they were done for the express purpose of obtaining public assistance benefits."  Tr. 28.  This is not a specific and legitimate reason for rejecting the opinions.

The ALJ was accurate that these evaluations were performed for the purpose of qualifying for public benefits.  The Court acknowledges that the final responsibility for deciding the issue of disability is reserved to the Commissioner.  S.S.R. 96-5p; 20 C.F.R. § 416.927(d).  However, "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  S.S.R. 96-5p.  The regulations require every medical opinion to be evaluated, regardless of its source.  20 C.F.R. § 416.927(c).  Furthermore, the purpose for which medical reports are prepared does not provide a legitimate basis for rejecting them.  *Lester,* 81 F.3d at 832.  Although Dr. Islam-Zwart and Dr. Arnold's opinion were prepared for the purpose of evaluating eligibility for DSHS benefits, the medical opinions which are the bases of the reports must be considered by the ALJ.  Thus, this reason for rejecting Dr. Islam-Zwart and Dr. Arnold's opinions is improper.

Third, the ALJ rejected Dr. Islam-Zwart and Dr. Arnold's opinion because they were not supported by the overall record.  Tr. 28.  Here, the ALJ summarized Dr. Islam-Zwart and Dr. Arnold's evaluation and opinion, as well as the opinions of Dr. Pollock, Dr. Toews, and Dr. Rubin.  Tr. 24-26.  Then, the ALJ concluded

1  "that opinions set forth in DSHS questionnaires and reports are limited by the fact

2  that these conclusions are not supported by commensurate clinical findings of

3  abnormality contained in longitudinal medical records, absent consideration of the

4  effects of active substance abuse." Tr. 28. This determination is supported in the

5  record. In Dr. Islam-Zwart's report, she questions Plaintiff's symptoms in light of

6  his substance abuse. Tr. 28, 499. Additionally, Dr. Arnold's testing showed

7  Plaintiff to be within normal limits, yet he gave Plaintiff multiple marked

8  limitations. Tr. 588-589. Being inconsistent with the records in the file is a

9  specific and legitimate reason for giving Dr. Islam-Zwart and Dr. Arnold's

10  opinions little weight.

11      Defendant asserts that the ALJ's decision to give Dr. Islam-Zwart's and Dr.

12  Arnold's opinion little weight is supported by  the fact that the definitions of

13  "moderate," "marked," and "severe" are different from those in the Social Security

14  Act Regulations. ECF No. 16 at 10. This is a post hoc rationalization that will not

15  be considered by the Court. *See Orn*, 495 F.3d at 630 ("the Court cannot uphold

16  the ALJ's decision based on "grounds upon which [the ALJ] did not rely").

17          **2.    Dr. Pollack**

18      Dr. Pollack evaluated Plaintiff on October 17, 2011, at the request of

19  Plaintiff's attorney "to determine his intellectual, emotional, neuropsychological,

20  and vocational status." Tr. 530. Dr. Pollack completed a clinical interview, a

21  Trails Making Test, a Minnesota Multiphasic Personal Inventory-2 (MMPI-2), and

22  a Wechsler Adult Intelligence Scale-IV (WAIS-IV). Tr. 530-535. Additionally, he

23  reviewed "extensive medical and school records." Tr. 530. The Trails Making

24  Test gave Plaintiff scores of 34 seconds for Part A and 100 seconds for Part B. Tr.

25  353. The Part B score fell in the impaired range. *Id*. The MMPI-2 gave Plaintiff a

26  moderately elevated F-scale score at T=82, suggesting he was overstating his

27  difficulties. Tr. 534. The WAIS-IV gave Plaintiff a Full Scale IQ of 80, which is

28  in the low average range and at the ninth percentile. Tr. 533. Dr. Pollack

completed a mental medical source statement, in which he opined that Plaintiff had a marked limitation in (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (2) the ability to complete an normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 538.  Additionally, Dr. Pollack opined that Plaintiff had a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.  *Id*.

The ALJ gave Dr. Pollack's opinion "little to no weight" because (1) it was a one-time evaluation performed at the request of Plaintiff's representative; (2) it lacked any historical treatment notes; (3) the marked mental limitations were inconsistent with the provider's narrative; and (4) it was inconsistent with other evidence in the record.  Tr. 29.

Plaintiff challenges the weight the ALJ gave to Dr. Pollack's opinion.  ECF No. 15 at 13.  Defendant did not contest Plaintiff's challenge.  ECF No. 16.

First, the ALJ noted that Dr. Pollack only saw Plaintiff once.  Tr. 29.  The fact that Plaintiff only saw Dr. Pollack once speaks to whether he is a treating or examining doctor, it does not meet the specific and legitimate standard required to reject the opinion of an examining doctor.  While the fact that Dr. Pollack is an examining psychologist and not a treating psychologist affects the weight given to his opinion, the ALJ is still required to provide specific and legitimate reasons beyond his examining status to reject his opinion.  *See* 20 C.F.R § 416.927(c); *Lester*, 81 F.2d at 830.

Furthermore, the ALJ rejecting the opinion because Plaintiff's attorney arranged the evaluation does not meet the specific and legitimate standard.  See *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998) ("in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it");

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

*Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988) (the source of referral was found to be relevant where there was no objective medical basis for the opinion); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (the source of the referral was found to be relevant where the ALJ found "actual improprieties" to question the credibility of the medical report). The ALJ attempted to show "actual improprieties" by asserting that unsupported marked limitations were present in all evaluations done at the request of counsel. Tr. 29. However, marked limitations were also opined by Dr. Arnold and Dr. Islam-Zwart, who both examined Plaintiff at the request of DSHS, therefore, this assertion is without merit. This is not a specific and legitimate reason to reject Dr. Pollack's opinion.

Second, the ALJ found that Dr. Pollack's evaluation lacked historical treatment notes. Tr. 29. Dr. Pollack specifically stated that he reviewed "extensive medical and school records," and referenced something of these records' contents. Tr. 530. While the Court acknowledges that it is unclear what medical records Dr. Pollack reviewed, it is evident by the evaluation that he did have some historical treatment notes. Tr. 532 (referring to an attempted suicide at age twelve appearing in the medical records). Therefore, the ALJ's assertion is not supported by the record and is, therefore, not a specific and legitimate reason to reject Dr. Pollack's opinion.

Third, the ALJ found that Dr. Pollack's opinion of marked and severe limitations were not supported by his evaluation report. Tr. 29. The ALJ found that "there are discrepancies that he did not appear to take into account, including the elevated scores on the MMPI and the questionable results of the Trail Making Tests." *Id*. This assertion is not supported by Dr. Pollack's treatment notes. Dr. Pollack specifically stated that the "results of the neuropsychological testing suggests a cognitive disorder which can only be clarified by additional neuropsychological testing." *Id*. Then, Dr. Pollack stated that his office attempted to contact Plaintiff to return for additional testing, but the attempt was

unsuccessful. *Id*. As such, the opinion was "based upon the information and testing that are available." *Id*. Therefore, the MMPI score and Trails Making Test were considered by Dr. Pollack in forming his opinion. As such, this reason is not supported by substantial evidence.

Fourth, The ALJ determined that the marked limitations opined by Dr. Pollack were inconsistent with the opinions of Dr. Toews, Dr. Rubin, and the state agency medical consultants, who found no evidence of a severe mental impairment. Tr. 29. In his decision, the ALJ summarized Dr. Pollack's evaluation and opinion, along with the opinions of Dr. Pollack, Dr. Toews, Dr. Rubin, and Alfred Scottolini, M.D., a state agency medical consultant. Tr. 25-26, 32. Then, the ALJ set forth his findings. Tr. 29. This is sufficient under *Magallanes* as a specific and legitimate reason to reject Dr. Pollack's opinion.

In conclusion, any error committed in the weight assigned to Dr. Islam-Zwart, Dr. Arnold, and Dr. Pollack is harmless because the ALJ provided specific and legitimate reasons for the weight assigned to each doctor. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## C. Appeal Council's Order

The ALJ heard Plaintiff's case on remand from the Appeals Council. Tr. 20. In the January 30, 2013, order, the Appeals Council instructed the ALJ to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's ability to perform past relevant work and other work." Tr. 127. At the hearing, the ALJ did not call a vocational expert. Tr. 72-105.

Pursuant to 20 C.F.R. § 416.1477(b), an ALJ "shall take any action that is ordered by the Appeals Council." In his decision, the ALJ discussed the Appeals Council remand order:

The undersigned acknowledges the Appeals Council directive to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 18

obtain vocational expert testimony.  However, the overhead reaching
limits are based on the claimant non-dominant left arm only, and
would not significantly erode the job base at the sedentary or light job
levels that did not expose the claimant to repetitive or continuous use
of his shoulder, as was also found by the state agency Single
Decisionmaker at Exhibit 7F and 4B/l, whose decision was affirmed
by Dr. Scottolini at Exhibit 12F and 4B/1.

Tr. 33-34.  The ALJ's assertion that limitations to the non-dominant hand does not
affect Plaintiff's place on the Guidelines for Residual Functional Capacity
Assessment is in contradiction with the agency's policy.  S.S.R. 83-12 states that
the loss of use of an upper extremity affects the size of the occupational base of all
ranges of work, generally precludes the performance of sedentary work, "because
most unskilled sedentary jobs require good use of both hands," and calls for the use
of a vocational expert to determine the size of the remaining occupational base for
a claimant with the compromised use of one or both of the upper extremities.  As
such, this claim is remanded for the ALJ to call a vocational expert to assess
Plaintiff's ability to perform past relevant work or other work based on the RFC as
determined by the ALJ.

**D.    Step Two**

The ALJ found Plaintiff's mental health impairments were not severe at step
two.  Tr. 22-30.  Plaintiff asserts that if the ALJ had given proper weight to the
opinions of Dr. Islam-Zwart, Dr. Arnold, and Dr. Pollack, his mental health
impairments would have been found severe at step two.  ECF No. 15 at 14.  As
discussed above, the ALJ provided legally sufficient reasons to reject the opinions
of Dr. Islam-Zwart, Dr. Arnold, and Dr. Pollack.  Therefore, the ALJ did not error
in his determination based on the opinions of these three doctors.

Nonetheless, since the case is already being remanded, the Court directs the
ALJ to make a new step two determination in light of Plaintiff's substance abuse.
In the January 30, 2013, remand from the Appeals Council, the ALJ was instructed
to determine if Plaintiff was disabled, considering impairments resulting from

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

substance abuse, before determining if the substance abuse was material.  Tr. 126.
But, the ALJ made the step two determination absent any impairments caused by
Plaintiff's substance abuse.  Tr. 26-27.  This was in violation of the Appeals
Council's order.  *See* 20 C.F.R. § 416.1477(b) (an ALJ "shall take any action that
is ordered by the Appeals Council").  Additionally, the ALJ failed to follow S.S.R.
13-02p, which directs adjudicators to walk through the five step analysis twice.
First, including any impairment caused by substance abuse, and, if found disabled,
make a determination if the substance abuse is material and complete a second five
step analysis.  Upon remand, the ALJ will complete the full five step analysis
including any impairments and their resulting limitations from substance abuse.
Then, if Plaintiff is found disabled, the ALJ is instructed to determine materiality
of Plaintiff's substance abuse and complete and new five step evaluation in accord
with S.S.R. 13-02p.

## REMEDY

The decision whether to remand for further proceedings or reverse and
award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,
888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate
where "no useful purpose would be served by further administrative proceedings,
or where the record has been thoroughly developed," *Varney v. Secretary of Health
& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused
by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280
(9th Cir. 1990).  *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)
(noting that a district court may abuse its discretion not to remand for benefits
when all of these conditions are met).  This policy is based on the "need to
expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are
outstanding issues that must be resolved before a determination can be made, and it
is not clear from the record that the ALJ would be required to find a claimant
disabled if all the evidence were properly evaluated, remand is appropriate.  *See*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 20

1  *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211
2  F.3d 1172, 1179-80 (9th Cir. 2000).

3        In this case, it is not clear from the record that the ALJ would be required to
4  find Plaintiff disabled if all the evidence were properly evaluated.  Further
5  proceedings are necessary for the ALJ to determine Plaintiff's severe impairments
6  at step two, complete the full five step evaluation including impairments and
7  limitations resulting from substance abuse, and call a vocational expert to testify
8  the Plaintiff's ability perform other work.  Should Plaintiff be found disabled, the
9  ALJ is then instructed to make a determination regarding the materiality of
10 Plaintiff's substance abuse and complete a new five step analysis in accord with
11 S.S.R. 13-02p.

<b>CONCLUSION</b>

13        Accordingly, **IT IS ORDERED:**

14        1.      Defendant's Motion for Summary Judgment, **ECF No. 16**, is
15 **DENIED**.

16        2.      Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is
17 **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for
18 additional proceedings consistent with this Order.

19        3.      Application for attorney fees may be filed by separate motion.

20        The District Court Executive is directed to file this Order and provide a copy
21 to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff**
22 and the file shall be **CLOSED**.

23        DATED February 4, 2016.



                        _____
                              JOHN T. RODGERS
                        UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 21